# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

KARLA A. TRUITT,          )
                                 )
        Plaintiff,      )
                                 )
    v.                 )        CASE NO.  2:14CV65  HEA
                                 )
WESTLAKE HARDWARE, INC.,  )
and KRAUSE-WERK gMBh & CO.  )
KG                        )
                                 )
        Defendants,   )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Krause-Werk's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(2). [Doc. No. 18]. Plaintiff has filed a Response in opposition to the Motion, and Defendant has filed a Reply.  For the reasons set forth below, the Motion is denied.

## Facts and Background[1]

Plaintiff's Complaint alleges the following:

Defendant Krause - Werk GmbH & Co. KG ("Krause-Werk"), is a German company with its corporate headquarters located in Alsfeld, Germany. Germany is a member nation and signatory of the Hague Service Convention Treaty.

---

[1] The recitation of facts is taken from Plaintiff's Complaint.  The facts are taken as true for the purposes of this motion. Such recitation in no way relieves any party from the necessary proof thereof in later proceedings.

Plaintiff alleges that at all relevant times, Defendant Krause-Werk has conducted business in the State of Missouri. Krause-Werk has transacted business in the State of Missouri, has made contracts within the State, has committed tortious acts within the State, has caused injury to a person residing within the State and its products, designed, tested, labeled and manufactured elsewhere, were sold and used within the State of Missouri in the ordinary course of trade or use.

Specifically, Defendant Krause-Werk committed tortious acts in the State of Missouri in that it, acting individually, and/or through its agent(s), alter ego(s), partner(s) and/or joint venture(s) designed, tested, labeled, manufactured, distributed, marketed, advertised and sold the defective subject ladder for release into the stream of commerce, knowing that it could be used in the State of Missouri, and the subject ladder was in fact both sold and used in the State of Missouri, causing serious injury to Plaintiff Karla Truitt, a Missouri resident. Defendant Krause-Werk is subject to the jurisdiction of this Court.

Defendant Krause-Werk was founded in 1900 and, since that time, has been actively engaged in the design, manufacture and distribution of various ladders and other climbing and scaffolding products.

Sometime around 1980 Defendant Krause-Werk designed, developed and patented a model of articulated ladder it named "Multi-Matic." Krause-Werk also registered "Multi-Matic" as a trade name with the United States Patent and Trademark Office. Krause-Werk then began manufacturing the "Multi-Matic"

ladder in its manufacturing and marketing facilities in Germany, Poland and Hungary, which it then sold throughout Europe and in the United States. During the mid-1980s Defendant Krause-Werk sold about two thousand (2,000) of its overseas manufactured "Krause Multi-Matic" ladders to consumers in the United States, via a distributor company it hired named DeMarco, located in Des Plaines, Illinois.

In 1987 Krause-Werk formed a wholly-owned subsidiary for the purpose of distributing its ladders in the United States, naming the company's new U.S. arm, "Krause, Inc.," and incorporating it under Illinois law, with a principal place of business in Roscoe, Illinois. Defendant Krause-Werk was the sole provider of all start-up capital and the sole owner of all corporate stock in "Krause, Inc."

Gunther Krause, who was the Owner, General Manager and Executive Director of Defendant Krause-Werk also served as the President and sole Executive Director of "Krause, Inc."

Defendant Krause-Werk provided the financial capital and the original production equipment to form the Rockford, Illinois "Krause, Inc." facility. Defendant Krause-Werk also sent employees from Germany to train their American counterparts in the manufacturing of the Multi-Matic ladders. The "Krause, Inc." operation in Illinois was converted to a manufacturing facility and began to also manufacture the Kraus Multi-Matic ladder it was already distributing throughout the United States.

Ed Hansen, Director of Operations for "Krause, Inc., when designated in prior litigation, explained in deposition testimony in 1995 that "Krause, Inc." was Defendant Krause-Werk's "plant in the United States."

Defendant Krause-Werk continued as the sole owner of the copyrights to the name "Multi-Matic" and the emblem placed on the ladders sold in the U.S. – the same name, emblem and insignia placed on Krause-Werk's ladders manufactured and sold in Europe.

By the early 1990s, Defendant Krause-Werk and its "Krause, Inc." facility had received notice of a number of instances in which U.S. consumers were injured or even killed while using Multi-Matic ladders over the years, including other claims and lawsuits.

In 1995 Defendant Krause-Werk executed a licensing agreement with its "Krause, Inc." subsidiary under which both entities had mutual responsibilities to share technical information about the Multi-Matic ladder – including the subject ladder that was eventually sold to Plaintiff Karla Truitt in Missouri.

The overall design of the Krause Multi-Matic ladders and its hinges, as patented by Defendant Krause-Werk, remained the same, while subtle changes were made to the material and coating used for the locking bolt during the early 1990s.

In 1997 Defendant Krause-Werk ordered its plant in the United States, the "Krause, Inc." facility, to perform a re-design process on their Krause Multi-Matic

ladders, leading to a change in the material used for the locking bolt (from zinc to powdered steel). Defendant Krause-Werk was kept informed during the re-design process. After the locking bolt had been selected as the component for alteration and the change made from zinc to powdered steel, Defendant Krause-Werk performed its own testing in Germany on the locking bolts using the new material. Following the subtle change to the locking bolt material, Defendant Krause-Werk and its U.S. subsidiary began to receive an even higher rate of claims and lawsuits for injuries and deaths suffered while using Krause Multi-Matic ladders in the United States.

In 1998 a recall was performed in the U.S. and Canada that included only a small selection of the Krause Multi-Matic ladders that had been sold since the 1980s.

In 2000 Defendant Krause-Werk put its wholly-owned U.S. subsidiary, "Krause, Inc.," into a bankruptcy, eventually liquidating the assets, copyrights and patents it owned in the U.S. through the "Krause, Inc." dissolution. Defendant Krause-Werk still designs, manufactures, markets and distributes ladders, and other climbing and scaffolding products throughout Europe from its production and marketing facilities located in Germany, Poland, Hungary, Russia and Switzerland.

"Krause, Inc.," after having received all of its financial capital, start-up capital and operating equipment from Defendant Krause-Werk, remained undercapitalized by its sole owner Krause-Werk and is now insolvent.

Plaintiff further claims that Defendant Krause-Werk so dominated the finances and control of "Krause, Inc." so as to render the latter its mere alter ego, Defendant Krause-Werk left "Krause, Inc." undercapitalized, leading to its insolvency and thereby causing injury or unjust loss if Plaintiff is not allowed to recover from Krause-Werk, thereby justifying the piercing of the corporate veil; All of the acts and omissions, and jurisdictional acts and conduct of "Krause, Inc." are chargeable to Defendant Krause-Werk as "Krause, Inc." was merely operating as its agent; c. All of the relevant acts, omissions and jurisdictional contacts and conduct of "Krause, Inc." were performed while it functioned and/or acted as either or both a joint venture or general partner of Defendant Krause-Werk, and acts are therefore chargeable to Defendant Krause-Werk as though committed directly by it.

In July of 2001, Plaintiff Karla Truitt bought a Krause Multi-Matic ladder off the shelf at the Westlake Hardware Store in Kirksville, Missouri.

On July 3, 2009, Plaintiff was preparing to mount a flagpole bracket on her home in Kirksville, Missouri. She placed the Krause Multi-Matic articulated ladder she purchased at Westlake's Kirksville, Missouri Hardware store, on a level concrete surface and situated it to be used as a six-foot folding ladder. After

deploying the locking bolt mechanism, Plaintiff climbed on the ladder, but it suddenly collapsed despite the fact the fact that the hinges looked and felt as though they were fully locked. Plaintiff fell through the ladder and to the ground. Plaintiff suffered a type six tibial plateau fracture in her left leg, requiring an open reduction internal fixation surgery on July 7, 2009, along with other painful procedures and ongoing medical care and treatment.

Defendant Krause-Werk developed, designed, tested, assembled, manufactured, labeled, distributed, marketed, advertised, and sold the subject ladder in the ordinary course of its business, both directly and through the conduct of its alter ego, agent, joint venture and partner "Krause, Inc."

Defendant Krause-Werk, as a designer, manufacturer, marketer, distributor and seller of ladders, had a duty to use due care in the design, manufacture, testing, assembly, labeling, distribution, marketing, sale and post-sale conduct relating to such products, including the subject ladder.

At the time Defendant Krause-Werk sold the subject ladder, as well as on July 3rd, 2009 it was in a defective and unreasonably dangerous condition when put to reasonably anticipated uses, by reason of its design, manufacture, warnings, labels and instructions, in that one or more of the ladder's locking mechanisms could appear locked to the user when it was not fully locked – a condition often called "false locking" – or, one or more of the locking mechanisms could become unlocked during foreseeable uses. The subject ladder was further defective and

unreasonably dangerous by its lack of adequately designed warnings and instructions provided with the product at the time of sale.

The Complaint alleges Krause-Werk failed to use the degree of care, skill and learning that would be used by an ordinarily careful expert in Krause-Werk's business in its design, manufacture, testing, assembly, labeling, distribution, marketing, sale and post-sale of the subject ladder in a number of respects including, negligently designing, manufacturing, labeling and selling the subject ladder in a defective condition that was unreasonably dangerous when put to reasonably anticipated uses when Krause-Werk knew, or by exercising due care, could have discovered the subject ladder's dangerous condition; negligently, carelessly, or recklessly failing to adequately test and investigate the defective and unreasonably dangerous condition of the subject ladder, even after receiving notice of claims that Multi-Matic ladders had caused injuries and deaths due to defect allegation; selling the subject ladder in a defective condition without giving reasonable warning of latent dangers in the reasonably foreseeable uses thereof – dangers defendant Krause-Werk knew or in the exercise of reasonable care could have known; failing to provide adequate warnings or disclosure of the dangerous defects in the Multi-Matic ladder to Plaintiff after the time of its original sale but before her injuries in July, 2009; failing to remove the subject ladder from the market after widespread injuries, claims, lawsuits and one recall had already occurred with other Multi-Matic ladders utilizing substantially the same design;

failing to provide adequate warnings to Plaintiff of the history of injuries and the risk of serious harm posed by the subject Multi-Matic ladder design; negligently failing to perform a recall of Multi-Matic ladders that would have included the subject ladder when it knew, or by exercising due care, could have known, about the subject ladder's defective and unreasonably dangerous condition.

Defendant Krause-Werk manufactured, distributed, marketed, advertised, and sold the subject ladder within the course and scope of its business. At the time Krause-Werk sold the subject ladder, as well as on July 3rd, 2009 it was in a defective and unreasonably dangerous condition when put to reasonably anticipated uses, by reason of its design, manufacture, warnings, labels and instructions, in that one or more of the ladder's locking mechanisms could appear locked to the user when it was not fully locked – a condition often called "false locking" – or, one or more of the locking mechanisms could become unlocked during foreseeable uses. The subject ladder was further defective and unreasonably dangerous by reason of its lack of adequately designed warnings and instructions provided with the product at the time of sale.

Plaintiff claims that the defects in the subject ladder described above made it unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics. Krause-Werk knew that the subject ladder would be used without inspection for defects and represented that it could be safely used and would be fit for the ordinary purposes for which it was purchased.

Plaintiff initiated this action on June 20, 2014. The Complaint sets out a claim for negligence and strict liability against each defendant.

Defendant Krause-Werk now moves to dismiss, asserting that this Court lacks personal jurisdiction over it.

## Discussion

A defendant may move to dismiss a case under Rule 12(b)(2) of the Federal Rules for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).

A plaintiff alleging personal jurisdiction "'must state sufficient facts in the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474 (8th Cir. 2012) (alteration in original) (quoting *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010)). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Wells Dairy*, 607 F.3d at 518. Personal jurisdiction "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (internal quotation marks omitted).

Although the Court may consider affidavits and other matters outside of the pleadings on a Rule 12(b)(2) motion, the pleader's burden, in the absence of an evidentiary hearing, is only to make a "minimal" *prima facie* showing of personal jurisdiction, and the Court "must view the evidence in the light most favorable to

the [pleader] and resolve all factual conflicts in its favor in deciding whether the [pleader] has made the requisite showing." *K-V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011). Notwithstanding that facts are viewed in the light most favorable to the pleader, "'[t]he party seeking to establish the court's *in personam* jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (quoting *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)); *Fastpath, Inc. v. Arbela Techs. Corp.,* 760 F.3d 816, 820 (8th Cir.2014).

The Eighth Circuit instructs courts to "approach [the] analysis of personal jurisdiction on two levels, first examining whether the exercise of jurisdiction is proper under the forum state's long-arm statute[,] [and] [i]f the activities of the non-resident defendant satisfy the statute's requirements, [to] then address whether the exercise of jurisdiction comports with due process." *Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384, 1391 (8th Cir. 1991).

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.' " *K–V Pharm. Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 591–92 (8th Cir.2011) (quoting *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir.2004)). "Although the

evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *Id.* (internal citations, quotation marks and quoted case omitted). The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in its favor in deciding whether the plaintiff made the requisite showing. *Id.* (citing *Digi–Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir.1996)).

Missouri's long-arm statute provides in relevant part that:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state[.]

Section 506.500. Section 506.500 "is construed to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process clause." *Bryant,* 310 S.W.3d at 232.

Missouri's long-arm statute expands a court's jurisdictional reach only to the extent allowed by the due process clause of the Fourteenth Amendment of the United States Constitution. Due process requires that, absent a traditional territorial basis such as a defendant's physical presence in the forum state, a

defendant must have sufficient minimum contacts with the forum state so as not to

" 'offend[ ] traditional notions of fair play and substantial justice.' " *Bryant,* 310

S.W.3d at 232 (quoting *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154). Minimum

contacts are evaluated on a case-by-case basis. *Peoples Bank,* 318 S.W.3d at 130.

The "exercise of personal jurisdiction over a defendant with minimum contact also

must be 'reasonable' in light of the surrounding circumstances of the case." *Id.*; *see*

*also Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.,* 480

U.S. 102, 113 (1987). *Andra v. Left Gate Property Holding, Inc.* 453 S.W.3d 216,

225 -226 (Mo.2015).

   "Missouri's long-arm statute authorizes personal jurisdiction over defendants

who, inter alia, transact business, make a contract, or commit a tort within the

state." *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG,* 646 F.3d

589, 593 (8th Cir.2011) (citing Mo.Rev.Stat. § 506.500.1). "In adopting the long-

arm statute, the Missouri legislature 'intended to provide for jurisdiction, within

the specific categories enumerated in the statutes [e.g., transacting business or

making a contract within the state,] to the full extent permitted by the due process

clause.' " *K–V Pharm.* 648 F.3d at 592 (brackets in original) (quoting *State ex rel.*

*Metal Serv. Ctr. of Ga., Inc. v. Gaertner,* 677 S.W .2d 325, 327 (Mo.1984) (en

banc)).

   In order to satisfy due process, a defendant must have sufficient minimum

contacts with the forum state "such that 'maintenance of the suit does not offend

traditional notions of fair play and substantial justice.' " *Dever,* 380 F.3d at 1073

(quoting *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th

Cir.1996)). Minimum contacts for purposes of personal jurisdiction may be

evaluated under two theories: general jurisdiction and specific jurisdiction. *Id.* For

general jurisdiction to exist, the defendant must have "continuous and systematic"

contacts with the forum state, even if the plaintiff's claims do not arise out of those

activities. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S.

408, 415–16 (1984)). "In contrast, specific jurisdiction is viable only if the injury

giving rise to the lawsuit occurred within or had some connection to the forum

state." *Id.* (citing *Helicopteros,* 466 U.S. at 414). In other words, the cause of

action must " 'arise out of' or 'relate to' a defendant's activities within a state."

*Lakin v. Prudential Sec., Inc.,* 348 F.3d 704, 707 (8th Cir.2003) (quoting *Burger

King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)). Both theories of jurisdiction

require "some act by which the defendant purposely avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and

protections of its laws." *Dever,* 380 F.3d at 1073 (quoting *Hanson v. Denckla,* 357

U.S. 235, 253 (1958)).

"Due process requires that a defendant have certain 'minimum contacts'

with the forum state for personal jurisdiction to be exercised." *Myers v. Casino

Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (citing *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).  More

specifically,

> Contacts with the forum state must be sufficient that requiring a party
> to defend an action would not "offend traditional notions of fair play
> and substantial justice." [*Int'l Shoe Co.*, 326 U.S.] at 316, 66 S. Ct.
> 154, 90 L. Ed. 95 (internal quotation marks and citation omitted).
> "The 'substantial connection' between the defendant and the forum
> State necessary for a finding of minimum contacts must come about
> by an action of the defendant purposefully directed toward the forum
> State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102,
> 112, 107 S. Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations
> omitted).

*Myers*, 689 F.3d at 911.

The Supreme Court has observed:

> Even if the defendant would suffer minimal or no inconvenience from
> being forced to litigate before the tribunals of another State; even if
> the forum State has a strong interest in applying its law to the
> controversy; even if the forum State is the most convenient location of
> litigation, the Due Process Clause, acting as an instrument of interstate
> federalism, may sometimes act to divest the State of its power to
> render a valid judgment.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980).

Here, Plaintiff concedes that the Court cannot maintain general personal

jurisdiction over Krause-Werk, and alleges only specific personal jurisdiction.

"Specific personal jurisdiction, unlike general jurisdiction, requires a

relationship between the forum state, the cause of action, and the defendant."

*Myers*, 689 F.3d at 912 (citing *Helicopteros*, 466 U.S. at 414).  Although Plaintiff

attempts to establish specific jurisdiction, Plaintiff fails to set out any specific

contacts Defendant had with the state of Missouri such that it could be expected to be brought into a court in this jurisdiction.

The Eighth Circuit has established a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant. These factors, from *Land–O–Nod v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983), are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. "[The court] must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal jurisdiction determination." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted).

In addition to the five *Land–O–Nod* factors, the Court must consider whether Defendant's alleged intentional acts were performed "for the very purpose of having their consequences felt in the forum state." *Dakota Indus.*, 946 F.2d at 1390–91.  This is known as the "effects test," and it was first employed by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test requires a plaintiff to make three *prima facie* showings in order for Defendant's alleged acts to serve as a source of personal jurisdiction. Plaintiff must show that Defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at Missouri, and (3) caused harm, the brunt of which was suffered—and which

Defendant knew was likely to be suffered—in Missouri. *Johnson*, 614 F.3d at 796 (internal quotation omitted). Rather than superseding the *Land-O-Nod* five-part test for personal jurisdiction, the *Calder* effects test merely "requires the consideration of additional factors when an intentional tort is alleged." *Dakota Indus.*, 946 F.2d at 1391; *see also Johnson*, 614 F.3d at 796–97.

The Eighth Circuit has clarified that it does not adhere to a "proximate cause standard" for the required connection between the defendant's contacts with the forum and the plaintiff's cause of action. *See id.* Rather, specific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation "result[s] from injuries . . . relating to [the defendant's] activities [in the forum state.]" *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). Courts consider "the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V Pharm. Co.*, 648 F.3d at 592–93.

Defendant contends that this Court lacks personal jurisdiction over it and should therefore grant their Motion to Dismiss Plaintiff's claims against it. For the reasons discussed below, the Court finds that it may exercise jurisdiction over Defendant Krause-Werk. Accordingly, the Court will deny the Motion.

## A. Due Process

The due process inquiry is framed within the Eighth Circuit's admonition that "[s]pecific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the

defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586 (citing *Burger King Corp.*, 471 U.S. at 472).

### 1.     The Nature and Quality of the Contacts with Missouri

The first *Land–O–Nod* factor concerns the nature and quality of Defendant's contacts with Missouri.  It is undisputed that Defendant never maintained residences, businesses, properties, offices, employees, or agents in Missouri, nor personally transacted any business in Missouri.

Plaintiff contends that Defendant's contacts with Missouri in this case were placing the product into the stream of commerce with the intent or purpose to serve the market in the forum state.  Plaintiff is required to plead "sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within [Missouri]," *Dairy Farmers*, 702 F.3d at 474.  Plaintiff alleges Defendant designed, developed and patented a model of the articulated ladder; it registered the trade name in the United States Patent and Trademark Office and it admits it owns the patent for the ladder; it began manufacturing the ladder in its manufacturing the "Multi-Matic" ladder in its manufacturing and marketing facilities in Germany, Poland and Hungary, which it then sold throughout Europe and in the United States; it sold about two thousand (2,000) of its overseas manufactured "Krause Multi-Matic" ladders to consumers in the United States, via a distributor company it hired;  it formed a wholly-owned subsidiary for the

purpose of distributing its ladders in the United States and incorporating it under Illinois law, with a principal place of business in Roscoe, Illinois; it was the sole provider of all start-up capital and the sole owner of all corporate stock; Gunther Krause, who was the Owner, General Manager and Executive Director of Defendant Krause-Werk also served as the President and sole Executive Director of "Krause, Inc."; it provided the financial capital and the original production equipment to form the Rockford, Illinois "Krause, Inc." facility; it also sent employees from Germany to train their American counterparts in the manufacturing of the Multi-Matic ladders; the "Krause, Inc." operation in Illinois was converted to a manufacturing facility and began to also manufacture the Kraus Multi-Matic ladder it was already distributing throughout the United States; Ed Hansen, Director of Operations explained in deposition testimony in 1995 that "Krause, Inc." was Defendant Krause-Werk's "plant in the United States;" it continued as the sole owner of the copyrights to the name "Multi-Matic" and the emblem placed on the ladders sold in the U.S. – the same name, emblem and insignia placed on Krause-Werk's ladders manufactured and sold in Europe; by the early 1990s, Defendant and its "Krause, Inc." facility had received notice of a number of instances in which U.S. consumers were injured or even killed while using Multi-Matic ladders over the years, including other claims and lawsuits; it executed a licensing agreement with its "Krause, Inc." subsidiary under which both entities had mutual responsibilities to share technical

information about the Multi-Matic ladder – including the subject ladder that was eventually sold to Plaintiff in Missouri; the overall design of the Krause Multi-Matic ladders and its hinges, as patented by Defendant Krause-Werk, remained the same, while subtle changes were made to the material and coating used for the locking bolt during the early 1990s; it ordered its plant in the United States, the "Krause, Inc." facility, to perform a re-design process on their Krause Multi-Matic ladders, leading to a change in the material used for the locking bolt (from zinc to powdered steel); it was kept informed during the re-design process; "Krause, Inc.," after having received all of its financial capital, start-up capital and operating equipment from Defendant Krause-Werk, remained undercapitalized by its sole owner Krause-Werk.

Plaintiff has failed to set out specific contacts with the State of Missouri, other than the sole allegation that Plaintiff purchased the ladder in Missouri. While Plaintiff sets out specific contacts with the United States, nowhere does Plaintiff delineate any contact Krause-Werk had with Missouri. The Court, in following the requirements of the Due Process Clause and the holding of the Supreme Court in *International Shoe Co. v. Washington*, finds that "traditional notions of fair play and substantial justice" would be offended if this Court exerted personal jurisdiction over Defendant. The Court therefore finds that, due to the nature and quality of the contacts between the parties, Defendants could not have reasonably

anticipated being haled into court in Missouri, and thus, the first *Land–O–Nod* factor weighs in favor of Defendant.

### 2. The Quantity of Contacts

Because Plaintiff failed to sufficiently allege the nature and quality of the contacts between Defendant and Missouri to confer specific jurisdiction, the numerosity of such contacts is immaterial to the Court's analysis. The second *Land–O–Nod* factor weighs in favor of the Illinois Defendant.

### 3. The Relationship of the Cause of Action to the Contacts

The third *Land–O–Nod* factor focuses on Defendant's contacts with Missouri with respect to the particular cause or causes of action asserted. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994). "The third factor distinguishes between specific and general [personal] jurisdiction." *Myers*, 689 F.3d at 911. "[S]pecific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant." *Id.* at 912. The *Calder* effects test may be utilized in analyzing the third factor where, as here, the plaintiff alleges tortious conduct. *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 1003 (E.D. Mo. 2013) (citing *Johnson*, 614 F.3d at 794–96).

The *Calder* Court found that the defendants were subject to California's personal jurisdiction because the defendants' acts were intentional, the allegedly libelous article they wrote was centered on the life and career of a longstanding

California resident, "and the brunt of the harm, in terms both of Plaintiff's emotional distress and the injury to her professional reputation, was suffered in California." 465 U.S. at 789. Because the defendants' acts were "expressly aimed at California," and they knew that "injury would be felt by Plaintiff in the State in which she lives and works and in which the National Enquirer has its largest circulation," the defendants were assumed to have reasonably anticipated being haled into court in the forum state. *Id.* at 789–90.

Following *Calder*, cases decided throughout this Circuit uniformly hold that in order for a defendant's tortious conduct to confer personal jurisdiction, there must be a *prima facie* showing that the defendant's intentional acts were "performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus.*, 946 F.2d at 1391 (internal citation omitted). *See, e.g.*, *Johnson*, 614 F.3d at 796 (no personal jurisdiction where defendant's allegedly defamatory comments were not expressly aimed at forum, and no other evidence of minimum contacts existed); *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir. 1993) (no personal jurisdiction where "focal point" of the tortious injury occurred in outside forum, even though the court agreed that effects of the harm ultimately were felt in the forum); *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (no personal jurisdiction where defendant had knowledge that plaintiff would be affected by intentional tort, but otherwise had no other connection with forum); *N.C.C. Motorsports*, 975 F. Supp. 2d 993 (no

personal jurisdiction where non-resident defendant entered into a lease with a Missouri plaintiff to use plaintiff's copyrighted shopping cart vehicle for promotional purposes, knowingly hired a third party to build an infringing shopping cart, and then terminated the lease when the shopping cart was ready); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 U.S. Dist. LEXIS 61157, 2011 WL 2199967, *4 (E.D. Mo. June 7, 2011) (no personal jurisdiction where defendant did not knowingly target trademark infringement at forum, and defendant had no other contacts with the forum).

Even a close examination of *Calder* reveals that the Supreme Court's finding of personal jurisdiction in that case depended on something more than the defendants' knowledge that the plaintiff would feel the brunt of the injury in her state of residence. 465 U.S. at 784–87. Other contacts between the defendants and the forum state were found in *Calder*, including the fact that the defendants made frequent trips to the forum for business, made direct phone calls to residents of the forum in furtherance of the tort, and published the defamatory article about the plaintiff in the forum, a state where the defendants' publication had its highest circulation. *Id.* All of these facts combined evidenced the *Calder* defendants' purposeful availment of the forum and justified the court's exertion of personal jurisdiction over them.

Plaintiff simply has not pled such facts in this case. Again, as noted, Plaintiff asserts that Defendant placed the ladders in the stream of commerce in the United

States, but with no specific allegations that the allegedly defective ladder was shipped to Missouri. Further, beyond the fact that Plaintiff has failed to plead sufficient facts to support a reasonable inference that Defendants "uniquely or expressly aimed [its actions] at Missouri," *Johnson*, 614 F.3d at 796, or that the allegedly defective product was sent to Missouri "for the very purpose of having [ ] consequences felt in [Missouri]," *Dakota Indus.*, 946 F.2d at 1391, personal jurisdiction is evaluated "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto," with Plaintiff bearing the burden. *Wells Dairy*, 607 F.3d at 518. Plaintiff has provided no such affidavits or exhibits.

Based on the Court's application of the *Calder* effects test, the third *Land–O–Nod* factor weighs in favor of Defendant.

### 4. Missouri's Interest in Providing a Forum for its Residents and the Convenience of the Parties

Before the Court considers the final two *Land–O–Nod* factors, it is important to recognize that they cannot outweigh the first three factors. *See Land–O–Nod*, 708 F.2d at 1340 ("For instance, the last two factors are said to be of secondary importance and not determinative.") Even if the Court were to assume the interest of Missouri in litigating this matter weighed in favor of Plaintiff, the fifth factor, the convenience of the parties, must weigh in favor of Defendant, a German corporation. The Court therefore concludes that though the fourth *Land–O–Nod*

factor weighs in favor of Plaintiff and the fifth *Land-O–Nod* factor weighs in favor

Defendant, Missouri's "interest in providing its residents with a forum cannot

make up for the absence of minimum contacts." *Digi-Tel Holdings v. Proteq*

*Telcoms.*, 89 F.3d 519, 525 (8th Cir. 1996).

### 5.    Due Process Conclusion

For the reasons explained, the Court finds that Plaintiff has failed to allege

the minimum contacts with Missouri necessary to comport with the Due Process

Clause as it relates to Plaintiff's claims against Defendant. Although the personal

jurisdiction analysis incorporates both a due process inquiry and a long-arm statute

inquiry, given that the Missouri long-arm statute authorizes personal jurisdiction to

the extent permissible under the Due Process Clause, a finding that a plaintiff has

*failed* to establish that personal jurisdiction comports with the Due Process Clause

is dispositive in Missouri cases, thus obviating the necessity of a long-arm inquiry.

*See Eagle Tech., Inc. v. Expander Ams., Inc.*, 2015 U.S. App. LEXIS 6718, at *9

(8th Cir. Apr. 22, 2015) ("Because 'the Missouri long-arm statute authorizes the

exercise of jurisdiction over non-residents to the extent permissible under the due

process clause, we turn immediately to the question whether the assertion of

personal jurisdiction would violate the due process clause.'") (quoting *Romak*

*USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)); *see also Viasystems*, 646

F.3d at 594 ("We need not decide whether these actions by St. Georgen suffice to

place it within the bounds of Missouri's long-arm statute, because it is clear that

the cited activities are not sufficient to surmount the due-process threshold.").[2]

Accordingly, based on the Court's due process analysis, it finds that it does not have personal jurisdiction over the Illinois Defendants arising from their alleged acts.

## B.    Alter Ego

Plaintiff asserts that the Court's personal jurisdiction over the defunct Krause, Inc. can be imputed to Krause-Werk on the theory that Inc. was the alter ego of Defendant. Plaintiff has effectively pled these allegations in the complaint, and the allegations are sufficient for the Court to exercise personal jurisdiction over Defendant on the basis of imputing to Defendant Inc.'s contacts with Missouri to litigate claims in this district.

"It is well established that in diversity cases a federal district court must apply the law of the forum state to determine the persons over whom it may assert *in personam* jurisdiction." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir. 1975). In that respect, the Court looks to Missouri law "to determine whether and how to pierce the corporate veil." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (citing *id.*).

"Piercing the corporate veil is an equitable doctrine used by the courts to look past the corporate form and impose liability upon owners of the corporation—

---

[2] By contrast, a court's finding that it *does* have personal jurisdiction over a non-resident defendant requires analysis of *both* the long-arm statute and the Due Process Clause. *See Myers*, 689 F.3d at 909–910 (citing *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010)).

be they individuals or other corporations—when the owners create or use the corporate form to accomplish a fraud, injustice, or some unlawful purpose. *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 375 (Mo. Ct. App. 2014); *see also Mobius Mgmt. Sys. v. W. Physician Search*, L.L.C., 175 S.W.3d 186, 188 (Mo. Ct. App. 2005) (noting that in order to pierce the corporate veil, "the plaintiff must show that the corporation is the alter ego of the defendant."). The Missouri Supreme Court has explained:

> [C]orporate forms will be ignored and the corporate veil pierced only if three factors are shown:
>
> 1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> 2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> 3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*Doe v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. banc 2013) (citing *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. banc 1999)).

The Complaint sets out the detailed basis for claiming that Krause, Inc. was the alter ego of Krause-Werk:  the patents and trademarks were registered in

Krause-Werk's name; it provided the start-up capital and was the sole owner of all of Inc.'s stock; it provided the financial capital and original production equipment to form the Rockford, Illinois facility; it sent employees from Germany to train Americans in the manufacturing of the ladders; it ordered the re-design process on the ladder. [3]

Accordingly, although Plaintiff has failed to adequately allege personal jurisdiction over Defendant based on its own contacts with Missouri, exclusively, the Court finds that Plaintiff has alleged sufficient facts to demonstrate a reasonable inference that the Court may impute its personal jurisdiction over Krause, Inc. to Defendant Krause-Werk through an alter ego theory.

## Conclusion

Based on the foregoing, the Court denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No.

---

[3] The Court does not definitively find that Plaintiff has successfully pierced the corporate veil and established that Krause, Inc. was Defendant's alter ego, but rather finds that—in viewing the evidence in the light most favorable to Plaintiff and resolving all factual conflicts in its favor—Plaintiff has made a minimal prima facie showing that the corporate veil should be pierced for purposes of personal jurisdiction. *K-V Pharm*, 648 F.3d at 591–92; see also *George v. Davis*, 2015 U.S. Dist. LEXIS 10648 (W.D. Ark. Jan. 28, 2015).

18] is **DENIED**.

Dated this 22nd day of May, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE